USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/29/2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
EVEN STREET PRODUCTIONS, LTD.,

    Plaintiff,

    v.           05 CV 3834 (DAB)

                OPINION

SHKAT ARROW HAFER & WEBER, LLP.

    Defendant.
------------------------------------X
DEBORAH A. BATTS, United States District Judge.

  Plaintiff Even Street Productions filed the above-captioned case against Defendant Shukat Arrow Hafer & Webber, LLP., for legal malpractice. Now before the Court is the Defendant's Motion to Dismiss. Plaintiff opposes the Motion to Dismiss.

  For the reasons that follow, Defendant's Motion to Dismiss is DENIED.

## I. Background[1]

  Plaintiff Even Street Productions is a corporation incorporated in the State of New York. (Am. Compl. ¶ 1.) Its principal place of business is likewise located in New York County, New York. (Id.) Plaintiff is the assignee of all the

---

[1] Unless otherwise indicated, the facts herein are taken from the First Amended Complaint and are accepted as true by the Court for the purposes of this Motion to Dismiss.

1

rights and interests of the musical career of Sylvester Stewart, professionally known as Sly Stone. (Id.) These rights and interests include, but are not limited to, his rights and interests as a composer, publisher, recording artist and entertainer. (Id.) Plaintiff is likewise the assignee of the rights and interests of Frederick Stewart, Rose Stewart, Cynthia Robinson, Larry Graham, Greg Errico and Gerald Martini with respect to their past activities as members of the musical group Sly and the Family Stone. (Id.) Plaintiff benefits from royalties and income generated by the exploitation of compositions written by Sylvester Stewart, and from royalties on the sale and exploitation of master recordings made by Sly and the Family Stone. (Am. Compl. ¶¶ 2, 3.)

Defendant Shukat Arrow Hafer & Webber, LLP., is a limited liability partnership practicing law; its principal office is in New York County, New York. (Compl. ¶ 5.)

In 2000, Diamond Time Ltd. and New York Times Television produced a documentary titled Jimi and Sly: The Skin I'm In. (Compl. ¶ 11.) This documentary was broadcast on the cable television network Showtime on September 17, 2000 and on at least two other occasions, in September and October of 2000. (Compl. ¶ 13.) The documentary incorporated, without the authorization or

2

permission of any of the rights holders, 39 musical compositions (the "Compositions") and 10 master recordings (the "Master Recordings") made by Sly and the Family Stone, as well as several film clips containing the image and likeness of Sly and the Family Stone. (Compl. ¶ 12.) All the Master Recordings were and are the exclusive property of Sony Music Entertainment, Inc. ("Sony"). (Compl. ¶ 6.) Copyrights in all the Compositions were and are owned by Mijac Music and administered by Warner/Chappell Music, Inc. ("Warner/Chappell") (Compl. ¶ 4.)

Prior to September 2003, Sony and Warner/Chappell retained Shukat Arrow Hafer & Webber to prosecute a copyright infringement action against New York Times Television, Showtime Networks, Inc. and Diamond Time Ltd. (Compl. ¶ 16.) On September 17, 2003, Shukat Arrow Hafer & Webber entered a written agreement with attorneys representing New York Times Television. (Compl. ¶ 18.) This agreement tolled the statute of limitations from September 17, 2003 to December 15, 2003. (Id.) The Parties were unable to reach agreement during that time. (Compl. ¶ 19.) They also did not commence any litigation relating to the copyright infringement during this period. (Compl. ¶ 20.) Instead, the Parties discussed reaching agreement to extend further the statute of limitations. (Compl. ¶ 21.) However, no such agreement was formalized. (Id.) On December 16, 2003, when the

statute of limitations expired for the Sony and Warner/Chappell
<u>The Skin I'm In</u> copyright claims, attorneys for the New York
Times and Showtime Networks declined to enter another tolling
agreement. (Compl. ¶¶ 21, 22.)

Plaintiff expected to benefit from resolution of the
copyright infringement claims against New York Times Television
and Showtime Networks because allegedly any amounts awarded to
Sony and Warner/Chappell would directly result in an increase in
the royalties and other monies paid to Plaintiff. (Compl. ¶ 17.)
In 2004, Plaintiff entered into separate agreements with Sony and
Warner/Chappell, in each case assigning, conveying and
transferring any and all claims, rights, suits, or causes of
action which the assignor had against any third party, including
but not limited to New York Times Television and Showtime
Networks, arising from their unauthorized use of the Master
Recordings and Compositions. (Compl. ¶¶ 23, 24; Pl.'s Mem. in
Opp'n to Mot. to Dis. Ex. B & C[2].) The terms of the
Warner/Chappell assignment agreement include a release which
reads:

> Grantee will not bring, institute or assert,
> or authorize or permit others to bring,
> institute or assert, any claim or action

---

[2] These exhibits are misnumbered in Plaintiff's Memorandum: there are two different Exhibit As and two different Exhibit Bs.

>           against Grantor or Mijac Music, its or their
>           predecessors, successors, licensees, agents,
>           or assigns in any way relating to the use of
>           the Compositions in the Program.

(Herbsman Decl., Exh. G. ¶ 3(d).)

## II. Discussion

### A. Legal Standard for Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to "test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006). On such a motion, the court "assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." Id. (citing AmBase Corp. v. City Investing Co. Liquidating Trust, 326 F.3d 63, 72 (2d Cir. 2003)). The court therefore "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). However, the plaintiff must provide enough facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 127

5

S.Ct. 1955, 1974 (2007). Pleading legal conclusions is not sufficient to prevent dismissal. Smith v. Local 819, IBT Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002). Finally, "'[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (citing Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998), cert. denied, 525 U.S. 1103 (1999)).

Federal Rule of Civil Procedure 8(a)(2) provides that civil complaints "shall contain... a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has explained that Rule 8(a)(2) requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true...." Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1965, (2007) (internal citations omitted). However, under Rule 8(a)(2), "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (per curiam) (citations omitted). Thus, on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),

"the bottom-line principle is that 'once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.'" Roth, 489 F.3d at 510 (quoting Bell Atlantic, 127 S.Ct. at 1969). "In order to withstand a motion to dismiss, a complaint must plead, 'enough facts to state a claim for relief that is plausible on its face.'" Patane v. Clark, No. 06-3446-CV, 2007 WL 4179838, at *3 (2d Cir. Nov. 28, 2007).

B. The Legal Malpractice Claim

Plaintiff argues that Defendant committed malpractice by allowing the statute of limitations to expire on Sony and Warner/Chappell's copyright infringement claims against Showtime and New York Times Television. (Pl. Mem. Law at 2.) At this stage of the litigation, Defendant does not dispute that its oversight led to the loss of these claims.

In New York, "[i]n deciding a motion to dismiss a legal malpractice action, the facts alleged by plaintiff are assumed to be true, and plaintiff is afforded the benefit of every possible favorable inference." Mercantile Capital Partners Fund, LP. v. Morrison Cohen, LLP. 2008 WL 1777431, *3 (N.Y.Sup. 2008) (citations omitted). In order to state a claim for legal malpractice under New York law, a Plaintiff must allege "(1) the

7

negligence of an attorney; (2) the negligence was the proximate cause of the loss sustained; and (3) proof of actual damages." Rondout Landing at the Strand, Inc. v. Hudson Land Dev. Corp., 361 F. Supp. 2d 218, 223 (S.D.N.Y. 2005).

To establish causation adequately in a legal malpractice claim, the plaintiff must show that, but for the attorney's negligence, "what would have been a favorable outcome was an unfavorable outcome. The test is whether a proper defense would have altered the result of the prior action." D'Jamoos v. Griffith, 2001 U.S. Dist. LEXIS 17595, No. 00 Civ. 1361, at *5 (E.D.N.Y. Aug. 1, 2001); see also, Pellegrino v. File, 291 A.D.2d 60, 738 N.Y.S.2d 320, 323 (1st Dep't) (citations omitted), lv. denied, 98 N.Y.2d 606, 774 N.E.2d 221, 746 N.Y.S.2d 456 (2002). This causation requirement, "seeks to insure a tight causal relationship exists between the claimed injuries and the alleged malpractice, and demands a nexus between loss and injury . . . ." Sloane v. Reich, 1994 U.S. Dist. LEXIS 2851, No. 90 Civ. 8187, 1994 WL 88008, at *3 (S.D.N.Y. Mar. 11, 1994). The "'but for' prong requires the trier of fact in effect [to] decide a lawsuit within a lawsuit, because it demands a hypothetical re-examination of the events at issue absent the alleged malpractice." Littman Krooks Roth Ball, P.C. v. N.J. Sports Prod., Inc., 2001 U.S. Dist. LEXIS 12677, No. 00 Civ. 9419, 2001

WL 963949, at *3 (S.D.N.Y. Aug. 22, 2001) (citing N.A. Kerson Co.
v. Shayne, Dachs, Weiss, Kolbrenner, Levy, et al., 59 A.D.2d 551,
397 N.Y.S.2d 142, 143 (2d Dep't 1977) (internal quotations marks
omitted)).

At this early stage of the litigation, however, Plaintiff
need only allege, not prove, the proximate cause element of the
legal malpractice claim. Mercantile, 2008 WL 1777431 at *4
(citing Gamiel v. Curtis & Reiss-Curtis, P.C., 791 N.Y.S.2d 78,
79 (First Dep't 2005); see also, Abuhouran v. Lans, N.06-2857-PR,
2008 WL 739903, *1 (2d Cir. 2008)(observing that to state
properly a claim for legal malpractice based on an underlying
criminal proceeding, Plaintiff must only allege his innocence, or
a colorable claim of his innocence).

For the purposes of this Motion to Dismiss, Defendant does
not dispute that the factual allegations set forth in Plaintiff's
Amended Complaint, if proven, and if Plaintiff had standing,
would be sufficient to state a claim for a judgment of
malpractice against Defendant. The Court agrees and finds that
Plaintiff has pleaded adequately the causation prong of this
legal malpractice claim.[3] Instead of challenging whether

---

[3] Should this case proceed through the completion of discovery and
evidence calls into question Plaintiff's allegation that, but for Defendant's
negligence, the outcome of the underlying copyright litigation would have
terminated favorably, Defendant could use this evidence to challenge the
merits of Plaintiff's claim.

9

Plaintiff has pleaded adequately the elements of the malpractice claim, Defendant argues for dismissal on the grounds that Plaintiff lacks standing to pursue this claim.[4]

C. Plaintiff's Standing

Defendant raises three challenges to Plaintiff's standing. First, Defendant argues that no attorney-client relationship existed between Plaintiff and Defendant, and therefore Plaintiff has no legally cognizable malpractice claim. (Def. Mem. Law at 6-7.) Second, Defendant avers that Plaintiff was not an intended third-party beneficiary of the retainer agreements. (Def. Mem. Law at 8-10.) Finally, Defendant argues that the assignment of Sony and Warner/Chappell's copyright claims to Plaintiff does not

---

[4] Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Def. Mem. Law at 1). However, standing can be raised on either a Rule 12(b)(1) or a Rule 12(b)(6) motion. RBCI Holdings, Inc. v. Drinks Americas Holdings, Ltd., 2008 WL 759339 at *3 (S.D.N.Y. 2008) (citations omitted). Where standing goes to the existence of a case or controversy, a prerequisite to jurisdiction, it is proper for the district court to first consider standing on a Rule 12(b)(1) motion before considering issues that maybe be inextricably intertwined with the merits. Id. Because the Court needed to review documents outside the pleadings in this case, namely the assignment agreements, in order to make factual findings about whether Plaintiff had standing, in this case, the Court considered Defendant's motion under both a 12(b)(1) and 12(b)(6) standards. See e.g., Winn v. Schafer, 499 F.Supp.2d 390, 395 (S.D.N.Y. 2007). The distinction is largely immaterial here, and the Court does not detail the Rule 12(b)(1) legal standard since, even under a Rule 12(b)(6) standard, the assignment agreements would be reviewed by the Court because the contracts were incorporated in the Amended Complaint by reference.

create a basis for Plaintiff's malpractice claims against
Defendant. (Def. Mem. Law at 11.)

1. Defendant's Attorney-Client Relationship and Third party
Beneficiary Arguments

Plaintiff asserts that it can legally pursue these claims
because they were assigned to Plaintiff by Defendant's clients,
Sony and Warner/Chappell. It is undisputed that the Plaintiff in
this case did not retain Defendant as their counsel. Thus,
Defendant's first argument is irrelevant.[5] Nor does Plaintiff
rely on its disputed status as a third-party beneficiary to the
contract in bringing this claim. Thus, Defendant's second
argument also does not warrant consideration. The only issue
that remains is whether the assignment agreements between
Plaintiff, Sony and Warner/Chappell give Plaintiff standing to
proceed in this action.

---

[5] In support of its argument, Defendant cites to Uehdgashi v. Kanamori,
161 F.Supp. 2d 221, 225 (S.D.N.Y. 2001) for the proposition that, "only" the
party retaining the services of an attorney can bring a legal malpractice
action against the attorney." However, this authority is miscited and
inapposite; Defendant both ignores the prefatory phrase Uehdgashi uses to
qualify this rule, "in general," and overlooks the fact that Uehdgashi does
not consider the assignment of a legal malpractice claim. It is well-settled
that in New York, pursuant to General Obligations Law § 13-101, all claims are
assignable except those expressly prohibited, or contrary to public policy.
The claims that are expressly prohibited do not include a claim for legal
malpractice. Greevy by Greevy v. Becker, Isserlis, Sullivan & Kurtz, 240
A.D.2d 539, 541 (N.Y. App. Div. 1997). In fact, legal malpractice claims are
often assigned in New York state. See e.g., Chang v. Chang, 226 A.D.2d 316
(N.Y. App. Div. 1996); Tawil v. Finkelstein Bruckman Wohl Most & Rothman, 223
A.D.2d 52, 56 (N.Y. App. Div. 1996); Am. Hemisphere Marine Agencies, Inc. v.
Kreis, 40 Misc. 2d 1090 (N.Y. Misc. 1963); Oppel v. Empire Mut. Ins. Co., 517
F. Supp. 1305 (S.D.N.Y. 1981).

11

1. **Defendant's Arguments that the Assignment Agreements Do Not Contemplate a Suit Against Shukat Arrow & Weber, LLP.**

Defendant argues that even if legal malpractice claims can be assigned, in this particular case, Plaintiff has no standing because the right to bring this claim was not among the rights assigned in the agreements between Plaintiff, Sony and Warner/Chappell. Defendant contends that the terms of the assignment agreements between Plaintiff and, respectively, Sony and Warner/Chappell do not include claims against Shukat Arrow & Weber, LLP. (Def. Mem. Law at 11-13.) With respect to the Warner/Chappell agreement specifically, Defendant further claims that, as an agent, it is released by the terms of that contract. (Id. at 14.) Defendant's arguments put into consideration the issue of contract interpretation.

The primary objective in contract interpretation is to give effect to the intent of the contracting parties "as revealed by the language they chose to use." Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1094 (2d Cir. 1993) (quoting Seiden Assocs. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992)); accord, Care Travel Co. v. Pan Am. World Airways, Inc., 944 F.2d 983, 987 (2d Cir. 1991); W.W.W. Assocs. v. Giancontieri, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 566 N.E.2d 639 (1990); Hartford Accident & Idem. Co. v. Wesolowski, 33

N.Y.2d 169, 171, 350 N.Y.S.2d 895, 305 N.E.2d 907 (1973). Issues of contract interpretation are "generally matters of law and therefore [are] suitable for disposition on a motion to dismiss." Citadel Equity Fund, Ltd. v. Aquila, Inc., 371 F. Supp. 2d 510, 516 (S.D.N.Y. 2005) (quoting Thayer v. Dial Indus. Sales, Inc., 85 F. Supp. 2d 263, 269 (S.D.N.Y. 2000)) (internal quotation marks omitted); see also, Lind v. Vanguard Offset Printers, Inc., 857 F. Supp. 1060, 1065 (S.D.N.Y. 1994). Further, in deciding a motion to dismiss, the Court may consider exhibits to the complaint and documents incorporated in the complaint by reference; in this case such exhibits include the contracts themselves. See, Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

It is long established that "the fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." Computer Assocs. Int'l, Inc. v. U.S. Balloon Mfg. Co., 10 A.D.3d 699 (N.Y. App. Div. 2004), citing Greenfield v. Philles Records, 98 N.Y.2d 562, 569, 780 N.E.2d 166, 750 N.Y.S.2d 565 (2002); Slatt v. Slatt, 64 N.Y.2d 966, 967, 477 N.E.2d 1099, 488 N.Y.S.2d 645 (1985). Therefore, a written agreement that is "complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." Greenfield, 98 N.Y.2d at 569; R/S Assoc.

13

v. New York Job Dev. Auth., 98 N.Y.2d 29, 771 N.E.2d 240, 744
N.Y.S.2d 358 (2002); W.W.W. Assoc. v. Giancontieri, 77 N.Y.2d
157, 162, 566 N.E.2d 639, 565 N.Y.S.2d 440 (1990). A contract is
unambiguous if the language it uses has "a definite and precise
meaning, unattended by danger of misconception in the purport of
the [agreement] itself, and concerning which there is no
reasonable basis for a difference of opinion." Breed v.
Insurance Co. of N. Am., 46 N.Y.2d 351, 355, 385 N.E.2d 1280, 413
N.Y.S.2d 352 (1978).

In this action, neither of the assignment agreements
explicitly refer to the Defendant by name as someone included or
excluded in the assignment of a malpractice claim. The question,
then, is whether the agreements are, respectively, reasonably
susceptible of more than one interpretation.

a. The Sony Assignment Agreement

The Sony Assignment Agreement was signed March 3, 2004. The
legal malpractice claim arose December 16, 2003, yet there is no
explicit mention of that claim in the assignment agreement. The
agreement does say that it assigns: "any and all claims Sony has
against a third party (including but not limited to New York
Times Television and Showtime Networks) ... arising from the
unauthorized use of the [Master Recordings] on the Infringing
Program." (Def.'s Mot. to Dis., Ex. F) (emphasis added). The

14

Plaintiffs argue that this includes the legal malpractice claims; the Defendant argues it does not. Looking at the Agreement in the light most favorable to Plaintiff, it is ambiguous:

"WHEREAS, the parties wish to structure a procedure pursuant to which any and all claims relating to the use of the Original Masters on the Infringing program may be pursued;

THEREFORE... the parties agree as follows:

1. Sony hereby forever assigns conveys and transfers any and all claims, rights, suits, or causes of action Sony has against any third party (including but not limited to New York Times Television and Showtime Networks) (the "Claims"), arising from the unauthorized use of the original Masters on the Infringing Program, to Even St. Productions Ltd."

or

""WHEREAS, the parties wish to structure a procedure pursuant to which any and all claims relating to the use of the Original Masters on the Infringing program may be pursued;

THEREFORE... the parties agree as follows:

1. Sony hereby forever assigns conveys and transfers any and all claims, rights, suits, or causes of action Sony has against any third party (including but not limited to New York Times Television and Showtime Networks) (the "Claims"), arising from the unauthorized use of the original Masters on the Infringing Program, to Even St. Productions Ltd."

b. The Warner/Chappell Assignment Agreement

The Warner/Chappell Assignment Agreement states that it assigns "all right, title and interest in and to any claims, rights, suits, and causes of action of any nature whatsoever ... against any third party, including but not limited to Producers/Distributors and/or other parties for failure to

15

enforce, protect or prosecute the aforesaid claims ... with respect to the use of the Compositions in Broadcasts of the Program." (Def.'s Mot. to Dis., Ex. G.) (emphasis added).

In this case, the Warner/Chappell Assignment Agreement is clear. Notwithstanding that one stated purpose of the assignment agreement was to allow Plaintiff to sue Showtime and New York Times Television, the legal malpractice claim against Defendant here is based on Defendant's "failure to enforce, protect or prosecute the aforesaid claims ... with respect to the use of the Compositions in Broadcasts of the Program." (Def.'s Mot. to Dis., Ex. G.)

Finally, the Court addresses the merits of Defendant's argument that it is released by the terms of the Warner/Chappell assignment agreement. Defendant argues that the provisions of that agreement which bar Plaintiff from pursuing actions against Warner/Chappell's agents act as a release of Shukat Arrow Hafer & Weber, LLP. The merits of this argument turn on whether Defendant was an agent of Warner/Chappell at the time the assignment agreement was entered.[6]

---

[6] Under general contract principles there can be no agreement unless the parties to the contract have mutual assent, or a meeting of the minds. Such understanding requires that all parties agree the stated terms of the contract as they exist at the time the contract is entered into. See generally, Calamari and Perillo, Contracts, Third Ed. Thus, if the Warner/Chappell agreement provides a release for its "agents," and, at the time the contract was entered into, Defendant was in fact a "former agent" of Warner/Chapell,

16

Although Defendant argues that, "There is not a single allegation in the Amended Complaint that justifies Plaintiff's conclusion that the attorney-client relationship between [Shukat Arrow Hafer & Weber, LLP] and Warner/Chappell had ended at the time the assignment was executed," the Court disagrees. Plaintiff alleges that Defendant was retained for representation in the underlying copyright litigation in September of 2003 and that Defendant negligently allowed the statute of limitations on that action to expire in December of 2003; the assignment agreements at issue were entered into in March of 2004 and July of 2004. (Am. Compl. ¶¶ 16-24.) Since, an "attorney is considered [to be an] agent when acting, or failing to act, in furtherance of the litigation," Gilfus v. Vargason, Nos. 9:04-CV-188, 9:04-CV189, 9:04-CV-190, 2008 WL 65579, *7 (N.D.N.Y 2008), Plaintiff has pleaded plausibly that Defendant's role as Warner/Chappell's agent was terminated well before Plaintiff and Warner/Chappell entered into an assignment agreement. See also, 2A N.Y. Jur2d, Agency § 35 (an agency that is limited to a particular accomplishment of some particular transaction terminates upon completion of the transaction for the accomplishment of which it was created).

If so, Plaintiff has pleaded sufficiently.

---

that release cannot be said to have contemplated Defendant.

III. CONCLUSION

Accordingly, Defendant's Motion to Dismiss is DENIED. Defendant shall answer within forty five (45) days of the date of this Memorandum and Order.

SO ORDERED.

Dated: New York, New York
May 24, 2008

*Deborah A. Batts*
Deborah A. Batts
United States District Judge